# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) QP HOLDINGS, LLC ) d/b/a QUANTUM PLASTICS, ) ) Defendant. ) ) | Case No.: 2:23-cv-02060 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff The Hanover Insurance Company ("Hanover"), files its Complaint for Declaratory Judgment against Defendant QP Holdings, LLC d/b/a Quantum Plastics ("Quantum"), and alleges as follows:

## I. INTRODUCTION

1. This litigation involves an insurance coverage dispute between Hanover and Quantum, related to Hanover's issuance of a Private Company Insurance Policy (the "Policy") to Quantum. In February 2022, a putative class action lawsuit was filed against Quantum (the "Underlying Lawsuit") alleging that Quantum improperly scanned the fingerprints of its employees each time they "clocked in" and "clocked out" for work, and in violation of "*the Illinois Biometric Information Privacy Act*" ("BIPA"). Presently, Quantum has demanded that Hanover provide coverage under the Policy for the Underlying Lawsuit.

2. By Endorsement, the Policy expressly bars coverage for any "**Claim**" (*i.e.*, the Underlying Lawsuit) that is "based upon," "arising out of" or "in any way related to" the "responsibilities, obligations, duties, or rules imposed by" "*the Illinois Biometric Information*

42870916v.1

*Privacy Act*" (hereinafter, the "BIPA Exclusion"). Here, the Underlying Lawsuit contains a single cause of action for Quantum's "Violation of *the Illinois Biometric Information Privacy Act*," and alleges: "[t]his class action seeks redress for Defendant's willful violations of *the Illinois Biometric Information Privacy Act*, 740 ILCS 14/1, *et seq.* ('BIPA') for failure to comply with Illinois's requirements for gathering individuals' biometric data." Accordingly, the Underlying Lawsuit alleging violation of the Illinois Biometric Information Privacy Act, is excluded from coverage under the Hanover Policy based on the BIPA Exclusion.

3. By letter dated March 21, 2022, Hanover denied coverage under the Policy for the Underlying Lawsuit based on the BIPA Exclusion, while also reserving its rights as to other Policy terms, conditions, exclusions, and/or endorsements that could limit or exclude coverage for the Underlying Lawsuit.

4. Over a year later, on April 14, 2023, counsel on behalf of Quantum took exception to Hanover's coverage position and "demands Hanover provide defense and indemnity coverage for the underlying litigation."

5. In addition to the BIPA Exclusion, other terms, conditions, exclusions, and/or endorsements to the Policy limit and/or exclude coverage for the Underlying Lawsuit.

6. An actual controversy exists between Hanover and Quantum regarding Hanover's purported obligation to provide Quantum with insurance coverage for the Underlying Lawsuit, and this controversy cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. **PARTIES**

7. Plaintiff Hanover is a company incorporated under the laws of New Hampshire with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

42870916v.1

8. On information and belief, Defendant Quantum is limited liability company whose members are citizens of the State of Arkansas, and in any case, not citizens of the State of New Hampshire or the Commonwealth of Massachusetts., with its principal place of business at 3730 Wheeler Avenue in Fort Smith, Arkansas 72901.

### III. JURISDICTION AND VENUE

9. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as the Underlying Lawsuit is a putative class action.

10. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the relevant events occurred in this District, including the issuance of the Policy to Quantum, and Quantum does business and has a principal office within this District.

### IV. BACKGROUND FACTS

**A.   The Hanover Policy**

11. Hanover issued to Quantum a "claims made" Private Company Advantage Insurance Policy, policy number LH5-D190539-05, with a **Policy Period** from March 31, 2021 to March 31, 2022 ("the Policy"). The Policy includes five Coverage Parts, but only one is relevant here, the Employment Practices Liability Coverage Part ("EPL Coverage"). The EPL Coverage has a Maximum Aggregate Limit of Liability of $3 million, with a Retention of $35,000 applicable to each "**Claim**."

12. A true and correct copy of the Policy is attached as Exhibit 1.

13. Hanover issued the Policy to Quantum at "3730 Wheeler Ave. Fort Smith, AR 72901," and the Policy includes an "Arkansas Policyholder Notice" in accordance with the "with Arkansas Act 197 of 1987," as well as five Arkansas State Amendatory Endorsements.

14. The Insuring Agreements of the EPL Coverage is at Section I of the Policy, and provide:

> **I. Insuring Agreements**
>
> The **Insurer** will pay on behalf of each **Insured**, **Loss** which the **Insured** is legally obligated to pay due to an **Employment Claim** or a **Third Party Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable.

15. Section III of the EPL Coverage of the Policy defines an "**Employee**" to include: "A natural person whose labor and services is, was or will be engaged and directed by an **Insured Entity**, including any part-time, leased, temporary, volunteer or seasonal worker."

16. Section III of the EPL Coverage of the Policy defines an "**Employment Claim**" to include any: "Civil proceeding commenced by the service of a complaint or similar pleading…which is brought and maintained by or on behalf of a past, present or prospective **Employee** or **Independent Contractor** of an **Insured Entity** against an **Insured** for an **Employment Wrongful Act,** including any appeal therefrom."

17. Section III of the EPL Coverage of the Policy contains the following definition of "**Employment Wrongful Act**":

      A. **Discrimination;**

      B. **Retaliation;**

      C. **Sexual Harassment;**

      D. **Workplace Harassment;**

      E. **Wrongful Termination;**

      F. Breach of an **Employment Contract;**

      G. **Workplace Tort;**

committed, attempted or allegedly committed or attempted by an **Insured Entity** or by an **Insured Individual** while acting in his or her capacity as such."

18. Section III of the EPL Coverage of the Policy defines "**Workplace Tort**" to include: "Invasion of privacy including the unauthorized use or disclosure of an **Employee's** medical information in violation of the Health Insurance Portability and Accountability Act, credit information in violation of the Fair Credit Reporting Act, or other related information obtained through an employment related background check."

19. Section III of the EPL Coverage of the Policy contains the following definition of "**Loss**":

> **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:
>
> A.   Monetary judgments, awards or settlements, pre-judgment interest and post-judgment interest, back and front pay, compensatory damages;
>
> B.   Punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the insurability of such damages where such jurisdiction has a substantial relationship to the **Insured,** the **Insurer,** or to the **Claim** giving rise to such damages;
>
> C.   Liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act;
>
> **Loss** does not include the portion of such amount that constitutes:
>
> 1.   Civil, criminal or administrative fines, taxes or penalties;
>
> 2.   The cost to comply with or provide any accommodation for persons with disabilities or any other status which is protected under any applicable federal, state, or local statutory law or common law anywhere in the world including the Americans with Disabilities Act, the Civil Rights Act of 1964, or any amendments to or rules or regulations promulgated under any such law;

- 5 -

3. Any future wages or benefits of any reinstated **Employee** or wages or benefits associated with the continued employment of an **Employee;**

4. Any matter deemed uninsurable by law;

5. Benefits or contributions payable under an employee benefit plan;

6. Salary, wages, commission, benefits or other monetary payments which constitute severance payments or payments pursuant to a notice period;

7. Any amount not indemnified by the **Insured Entity** for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order; or

8. Any amount allocated to non-covered loss pursuant to Section IX. Allocation, of this Coverage Part

20. Endorsement No. 6 to the EPL Coverage provides:

### BIOMETRIC INFORMATION EXCLUSION

In consideration of the premium charged it is agreed that:

Section IV. Exclusions is amended to include:

<u>Biometric Information</u>

Based upon, arising out of or in any way related to the responsibilities, obligations, duties or rules imposed by any foreign, federal, state or local statutory law or regulation, anywhere in the world including but not limited to the Illinois Biometric Information Privacy Act and the EU General Data Protection Regulation, that governs the collection, storage, destruction, disclosure, protection, use, sale, lease or trade of biometric information including but not limited to the characteristics of any fingerprint, handprint, facial geometry, retinal scan, or voiceprint. However, this exclusion shall not apply to Loss arising from any securities **Claim**, **Security Holder Derivative Demand**, or **Security Holder Derivative Action**.

B. <u>**The Underlying Lawsuit**</u>

21. On or about February 16, 2022, Plaintiff Marcelina Maldonado filed the Underlying Lawsuit which is a putative class action suit against Quantum.

22. A true and correct copy of the Underlying Lawsuit is attached as Exhibit 2.

- 6 -

42870916v.1

23. The Underlying Lawsuit contains a single cause of action for "Violation of the Illinois Biometric Information Privacy Act," and alleges: "[t]his class action seeks redress for Defendant's willful violations of the Illinois Biometric Information Privacy, Act, 740 ILCS 14/1, *et seq.* ('BIPA') for failure to comply with Illinois's requirements for gathering individuals' biometric data."

### C. Application of the Policy's Terms, Conditions, Exclusions and Endorsements

#### 1. The BIPA Exclusion

24. Through Endorsement No. 6 to the EPL Coverage, the BIPA Exclusion bars coverage for "any **Claim**" (*i.e.*, the Underlying Lawsuit") that is "based upon," "arising out of" or "in any way related to" "the responsibilities, obligations, duties or rules imposed by" "*the Illinois Biometric Information Privacy Act*" (emphasis added).

25. The Underlying Lawsuit contains a single cause of action for "Violation of *the Illinois Biometric Information Privacy Act*," and alleges: "[t]his class action seeks redress for Defendant's willful violations of *the Illinois Biometric Information Privacy Act*, 740 ILCS 14/1, et seq. ('BIPA') for failure to comply with Illinois's requirements for gathering individuals' biometric data" (emphasis added). Accordingly, the BIPA Exclusion bars coverage under the Policy for the Underlying Lawsuit.

#### 2. "Loss" Does Not Include "Liquidated Damages"

26. The Policy's definition of "**Loss**" is expressly limited to "Liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act."

27. Under the Illinois BIPA Statute, Sections 740 ILCS 14/20(1) and (3), liquidated damages of $5,000 are available for each willful and/or reckless violation of BIPA, and

liquidated damages of $1,000 are available for each negligent violation of BIPA. Accordingly, because the liquidated damages sought in the Underlying Lawsuit are not pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act, the Policy does not afford coverage for any liquidated damages in the Underlying Lawsuit.

### 3. "Loss" Does Not Include any "Penalties"

28. The Policy's definition of "**Loss**" is expressly does not provide coverage for any "civil…penalties."

29. Under the Illinois BIPA Statute, Sections 740 ILCS 14/20(1) and (3), liquidated damages of $5,000 are available for each willful and/or reckless violation of BIPA, and liquidated damages of $1,000 are available for each negligent violation of BIPA. Accordingly, the Policy does not afford coverage for any liquidated damages in the Underlying Lawsuit as such damages constitute a "penalty," particularly under the Illinois Supreme Court's decision in *Cothron*, as the liquidated damages under BIPA bear no relationship whatsoever to the harm incurred by the plaintiffs.

### COUNT I – Declaratory Judgment Regarding Hanover's Duty to Defend

30. Hanover incorporates and restates each and every foregoing allegation as if fully set forth herein.

31. Quantum contends that Hanover has a duty to defend and/or a duty to pay the **Defense Expenses** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

32. Hanover contends that it has no duty to defend and/or no duty to pay the **Defense Expenses** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

- 9 -

33. Specifically, in accordance with the terms, conditions, exclusions, and endorsements of the Policy, Hanover has no duty to defend and/or no duty to pay the **Defense Expenses** in connection with the Underlying Lawsuit, in whole or in part, for the following reasons:

    a. The BIPA Exclusion;

    b. The definition of "**Loss**" only includes "Liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act";

    c. The definition of "**Loss**" does not include "civil…penalties";

34. Hanover also relies upon all additional terms, conditions, exclusions, and endorsements in the Policy and not specifically identified herein that potentially limit or preclude coverage for the duty to defend and/or to pay the **Defense Expenses** for the Underlying Lawsuit.

35. This dispute is ripe for resolution by this Court.

36. Hanover seeks a declaration from this Court that Hanover has no duty to defend and/or no duty to pay for the **Defense Expenses** incurred in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

**COUNT II – Declaratory Judgment Regarding Hanover's Duty to Indemnify**

37. Hanover incorporates and restates each and every foregoing allegation as if fully set forth herein.

38. Quantum contends that Hanover has a duty to indemnify it in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

39. Hanover contends that it has no duty to indemnify Quantum in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

40. Specifically, in accordance with the terms, conditions, exclusions, and endorsements of the Policy, Hanover has no duty to indemnify Quantum in connection with the Underlying Lawsuit, in whole or in part, for the following reasons:

    a. The BIPA Exclusion;

    b. The definition of "**Loss**" only includes "Liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family and Medical Leave Act or Equal Pay Act";

    c. The definition of "**Loss**" does not include "civil…penalties";

41. Hanover also relies upon all additional terms, conditions, exclusions, and endorsements in the Policy and not specifically identified herein that potentially limit or preclude coverage for the duty to indemnify Quantum for the Underlying Lawsuit.

42. This dispute is ripe for resolution by this Court.

43. Hanover seeks a declaration from this Court that Hanover has no duty to indemnify Quantum for any "**Loss**" incurred in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

WHEREFORE, Hanover respectfully requests that this Court enter judgment in Hanover's favor and against Quantum, (1) declaring that Policy provisions preclude coverage for the Underlying Lawsuit, (2) declaring that Hanover has no duty to defend and/or to pay for the **Defense Expenses** in connection with the Underlying Lawsuit, , (3) declaring that Hanover has no duty to indemnify Quantum for any "**Loss**" related to the Underlying Lawsuit, and (4) that

this Court to grant Hanover such other and further relief as this Court deems just and equitable under the circumstances.

                    Respectfully Submitted,

                    MUNSON, ROWLETT, MOORE & BOONE, P.A.
One Allied Drive, Suite 1600
Little Rock, AR 72202
501-374-6535 (phone) / 501-374-5906 (fax)

By  */s/ Zachary R. Hill*
    BRUCE MUNSON, BAR NO. 78118
    ZACHARY R. HILL, BAR NO. 2019132
    bruce.munson@mrmblaw.com
    zachary.hill@mrmblaw.com

James K. Thurston, Esq.
Daniel Tranen, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, IL. 60603
(312) 704-0550 (telephone)
Email: james.thurston@wilsonelser.com
Email: daniel.tranen@wilsonelser.com